THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* OSVALDO VARGAS WISCOVICH, Defendant and Appellant.

No. 13385. Argued November 1, 1940.—Decided November 26, 1948.

356

*José Rafael Gelpí* for appellant. *Luis Negrón Fernández, Attorney General,* and *J. Rivera Barreras, Prosecuting Attorney,* for appellee.

MR. JUSTICE TODD, JR., delivered the opinion of the Court.

This is a case of rape under subd. 1 of § 255 of the Penal Code. The defendant was found guilty by a jury. He filed a motion for a new trial which was denied and the court sentenced him to serve an indeterminate sentence of from five to nine years imprisonment. He appealed and alleges that the lower court erred in refusing to admit in evidence for the defendant the baptismal certificate of the alleged prosecutrix; in not permitting the defendant to present all his evidence in support of his motion for a new trial and in denying said motion.

▆▆ The first error assigned lacks merit. The defendant sought to impeach, with the baptismal certificate of Divina Cotty, the birth certificate issued by the Registry of Vital Statistics which was presented as part of the evidence for the prosecution to show that the alleged prosecutrix was born on October 16, 1932 (the offense was committed on May 24, 1945), on the ground that the baptismal certificate revealed that she was born on March 29, 1929. We have decided that a baptismal certificate certifies to the act which leads to its execution and the date thereof, namely, the administration of the baptism and nothing more. *Aguayo et al.* v. *García,* 11 P.R.R. 273. The certificate from the Registry of Vital Statistics with respect to the birth of the alleged prosecutrix constituted evidence of said act which could not be impeached by the baptismal certificate. Pursuant to § 250 of the Civil Code (1930 ed.)[1] no other evidence shall be admitted of the records in the registry except in the cases specifically enumerated therein.

[1] Section 250 provides: "The records in the registry shall be evidence of the civil status, and any other evidence can be admitted only when such records have never existed or the books of the registry should have disappeared or when a litigation is instituted before the courts."

 The second and third errors involve the same question. The defendant moved for a new trial on the ground of newly discovered evidence. This evidence consisted in a second certificate of the Registry of Vital Statistics in connection with the birth of Divina Cotty, the alleged prosecutrix. This certificate showed that her own mother recorded the birth of her daughter on June 9, 1936 and stated that the child was born on April 29, 1929.[2] The defendant explained how the record had been found incidentally by the officer in charge of the Registry of Vital Statistics in Cabo Rojo after the trial.[3] The lower court held that this second certificate was not admissible in evidence and, therefore, that a new trial did not lie on that ground. It based its decision on § 31 of Act No. 24 of April 22, 1931, that is, on the Vital Statistics Registry Act of Puerto Rico which prescribes:

"*Provided,* That omissions or defects appearing on any certificate before being registered in the Department of Health may be corrected by inserting in red ink the necessary corrections or additions in said certificate, *but after the same has been filed in the Department of Health, no correction, addition or amendment substantially altering it, shall be made thereon unless by virtue of an order of a district court,* which order in such case, shall be filed in the Department of Health, reference to be made to the certificate to which it corresponds." (Italics ours.)

After citing this provision the court expressed itself as follows:

"In the motion for a new trial the defendant does not invoke any court decision or order by virtue of which the record of birth of Divina Cotty made in nineteen hundred thirty-two was either modified, annuled or declared nonexistent, and from the testimony of the witness Pedro Nelson Colberg it likewise appears that there is no court decision authorizing the amendment to said record, for which reason the record made in nineteen

---

[2] This is the third date on which it is alleged Divina Cotty was born —October 16, 1932, March 29, 1929 and April 29, 1929.

[3] It should be noted that this was the second trial in this case, since no verdict was rendered in the first trial.

hundred thirty-two is the only one which, under the provisions of the Vital Statistics Registry Act of 1931, has legal force and validity and any other record made subsequent thereto without the intervention of the court is null and void for all legal purposes no matter who made it or for whatever purposes it was made.

"Any alteration made in the age stated in a record of birth is such a substantial change that it not only requires the intervention of the court for its legal validity and force but said intervention must be procured through the proper proceedings and on conclusive evidence satisfactory to the judge, a proceeding *ad perpetuam rei memoriam* not being sufficient, according to the ruling in *Ex Parte Pérez,* 65 P.R.R. 883, due to the importance and the effect that said proceeding may have on the status and condition of the person involved and the prejudice that might be caused to a third person.

"To sanction a contrary view, that is, to admit in evidence birth records made subsequent to the original record entered according to the law, without the former being supported by a court decision or order which lends them legitimacy and legal force would be tantamount to defeat the purpose and destroy the seriousness and stability of the Registry of Vital Statistics whose entries or records would be at the mercy of the selfishness and unbridled interests, the registry no longer being the strict and reliable institution that serves the need of the State.

"The document on which defendant seeks to ground his motion for a new trial is highly suspicious due to the attendant circumstances of this proceeding wherein the defendant was tried twice for lack of a verdict in the first trial, and it would still be highly suspicious, due to those facts, even if they were supported by a court decision rendered pursuant to the requirements of Section 31 of the Vital Statistics Registry Act of 1931 and *Ex parte Pérez,* 65 P.R.R. 883."

We do not agree with all the conclusions of the lower court. Having refused to admit additional evidence at the hearing of the motion for a new trial, nothing appears in the record to explain why the mother recorded the birth of her daughter in 1936 despite the fact that her birth had been recorded by another person in 1932. We have no doubt that the aim pursued by § 31, *supra,* is to avoid that in the entries

of the Registry of Vital Statistics amendments or alterations be made without an order from the court, a proceeding *ad perpetuam rei memoriam* not being sufficient according to our holding in *Ex parte Pérez, supra*. But the situation here is different. There were and there are in the Registry of Vital Statistics of Cabo Rojo two birth records of Divina Cotty which are entirely contradictory. The second record, made in 1936, was entered by the Registrar of Vital Statistics apparently unaware that a previous record had been made in 1932. Which of the two represents the true facts?

We do not know nor did the lower court, which had nothing before it tending to show that the second record should be considered "suspicious" as it stated in its opinion. This conclusion is not supported by any evidence whatsoever. The crime in this case was committed in 1945 so we can not presume that the record made by the mother in 1936, and in the absence of evidence to the contrary we must accept that it was made in said year, was made for the purpose of impeaching, in a case of rape, nine years later, the record made in 1932.

The lower court, in deciding that the birth certificate issued in 1936 was inadmissible and in denying the motion for a new trial, had no evidence to prove that the date of the birth stated in said certificate was not true. We are of the opinion that in a criminal proceeding the court can not pass upon the validity or nullity of one of two contradictory birth records entered in the Registry of Vital Statistics. We concede that § 31, *supra*, is applicable to this case because the second record is an amendment to the first as to the date of the birth of Divina Cotty, but it is a fact that the second record exists and there is nothing in the record to show that appellant took any part in procuring the same. However, the rights of the appellant in this case are affected if the information contained in the second record is correct inasmuch as if the alleged prosecutrix was born in 1929 instead

of 1932 there was no ground for prosecuting him for rape under subd. 1 of § 255 of the Penal Code. Even if said second record were not admissible in evidence because it merely operated as an amendment, not authorized by the court, of the first record, the ends of justice would be better served if the lower court, before passing on the motion for a new trial, would have given appellant an opportunity to move the court, in an independent proceeding, after hearing all the evidence with regard to the second record, to issue an order, if proper, amending the first record. We must bear in mind that although the baptismal certificate was not admissible to impeach the first record of 1932, said certificate plays an important part in this case if it is compared with the facts of the second record of 1936, inasmuch as the alleged prosecutrix appears to have been baptized in 1929, that is, in the same year it is alleged she was born, according to the second record.

The attendant circumstances as to the exact date of the birth of Divina Cotty, the essential element in the information for rape under subd. 1 of § 255 of the Penal Code against appellant, justify that this case be considered and treated as an exception to the rule, where although the intention of the Legislature in approving § 31 of the Vital Statistics Act should be applied, yet appellant should be given an opportunity, in the proper civil proceeding, if it lies, to procure the amendment of the first record made in 1932 to conform it to the second record entered in 1936, or to order the cancellation of said second record, if void. Since this is a matter that should be discussed in the District Court of Mayagüez, we do not see what prejudice may be caused by leaving defendant's motion for a new trial pending of decision until said proceeding is terminated, inasmuch as the same court, with the intervention of the District Attorney, can speed up the decision to be rendered therein. If it were decided that the first record should be amended, it is obvious that a new trial would be granted. If, on the contrary, it is shown that

the amendment does not lie, it is likewise obvious that the motion would be denied.

The judgment of the lower court should be set aside, the decision denying the new trial reversed and the case remanded to the lower court for further proceedings not. inconsistent with this opinion.